IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NORBERT MERTENS,

      Petitioner,

v.                                                    No. Civ. 15-899 MV/SCY

JOANA KLEINSORGE-MERTENS,

      Respondent.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Petitioner's Motion for Attorney Fees and Costs Pursuant to 22 U.S.C. § 9007(3). ECF No. 46.  Having considered the parties' arguments, the record, the relevant law, and being otherwise fully advised, I recommend granting Petitioner's motion in part and denying it in part.

**I.      BACKGROUND**

This case arises under the International Child Abduction Remedies Act (ICARA), 42 U.S.C. §§ 9001 *et seq.* The full factual history of this case will not be repeated here.  Suffice it to say that in light of the pending dissolution of the parties' marriage, Petitioner filed the underlying petition seeking to return the parties' children to Germany. ECF No. 1.  On November 18, 2015, Judge Vazquez granted Petitioner's Verified Complaint and Petition for Return of the Children. ECF No. 39.  In so doing, Judge Vazquez ordered that the parties' children be immediately returned to Germany. ECF No. 40. Judge Vazquez furthermore stated that Petitioner may file a motion for attorney's fees and costs.  On December 18, 2015, Petitioner submitted his motion for attorney's fees and costs in the amount of $53,995.58.  ECF No. 46.  On December 30, 2015, Respondent filed her response to Petitioner's motion objecting to a number of Petitioner's alleged fees and costs. ECF No. 47. Petitioner filed his reply on January 13, 2016 (ECF No. 50)

and Respondent was permitted to file a surreply on April 21, 2016. ECF No. 57. On January 1, 2016, Judge Vazquez referred the motion to the undersigned Magistrate Judge to provide a recommendation on Petitioner's motion.  ECF No. 49.

## II.   LEGAL STANDARDS

The Hague Convention on the Civil Aspects of International Child Abduction was adopted by its signatories, which include the United States, to address "the problem of international child abductions during domestic disputes." *Abbott v. Abbott*, 560 U.S. 1, 8 (2010). The terms of the Convention were implemented by Congress through the ICARA.  In relevant part, the ICARA provides that

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22. U.S.C. 9007(b)(3). The ICARA "contemplates the use of such awards to restore a petitioner to the financial position he or she would have been in had there been no removal or retention, as well as to deter violations of the Hague Convention." *Aguilera v. DeLara*, No. 14-01209, 2014 WL 4204947, *1 (D. Ariz. Aug. 25, 2014).[1]  The respondent bears the burden of establishing that an award of fees and costs would be clearly inappropriate under the circumstances.  *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004).

---

[1] I rely upon *Aguilera* and other unpublished opinions in analyzing the issues presented herein. The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005). I find that the unpublished opinions I have cited have persuasive value with respect to a material issue, and will assist me in the proposed disposition of the present issues.

Given that it is Respondent's burden to establish that an award is clearly inappropriate, I will assume that in the absence of specific objections to requested fees and costs that those fees and costs are appropriate. Accordingly, I structure my analysis in line with Respondent's objections.

### III.   COSTS

### A. Petitioner's Home Rental Costs

Petitioner seeks costs associated with his rental of a home in New Mexico from July 2015 through November 2015.  The cost of the rental was approximately $1500 per month for a total of $7500. Respondent objects to this cost because this was the home that the parties shared while living in New Mexico, it was the location of Petitioner's business, and Petitioner renewed the lease agreement in June 2015 prior to filing this case. Citing *Paulus ex rel. P.F.V. v. Cordero*, No. 3:12-cv-986, 2013 WL 432769 at *3 (M.D. Pa. Feb. 1, 2013), Respondent further argues that lodging expenses, except those for attendance at trial, should not be recoverable. ECF No. 47 at 2.

I largely agree with Respondent. In *Paulus*, the court only permitted the Petitioner to recover lodging expenses specifically related to his attendance at the evidentiary hearing. 2013 WL 432769 at * 3. *Cf. Aldinger v. Segler*, 338 F.Supp.2d 296, 298-99 (D.P.R. 2004) (limiting the Petitioner's recoverable transportation costs to those associated with attendance at the evidentiary hearing).  Respondent should not be held responsible for subsidizing Petitioner's housing costs during the pendency of the litigation.  However, to the extent that Petitioner's decision to stay in New Mexico during the litigation, and therefore incur these housing costs, likely contributed to the avoidance of other considerable costs—such as the cost of traveling from Germany for the

3

evidentiary hearing and associated lodging fees—I recommend permitting Petitioner to recover $1500 of his claimed travel costs. *See In re Application of Stead v. Menduno*, 77 F.Supp.3d 1029, 1038 (D. Colo. 2014) (awarding the petitioner his airfare from New Zealand to attend the hearing).

**B.  Petitioner's Airfare to Germany**

Petitioner also seeks to recover approximately $2900 in airfare for trips to Germany. ECF No. 46 at 2.  Petitioner acknowledges that the purpose of these trips was for Petitioner to engage in part-time work in Germany but Petitioner contends that it was necessary—and therefore a recoverable cost—so that Petitioner could afford legal representation and continue to pursue the case. ECF No. 50 at 1-2.

While the statute provides for transportation costs, the costs contemplated by the statute are for those "related to the return of the child."  22 U.S.C. § 9007(b)(3). Petitioner's argument regarding the necessity of returning to Germany for part-time work in order to fund the litigation stretches the statute's allowance of transportation costs beyond the statute's intention. *See Aldinger*, 338 F.Supp.2d at 298-99 (limiting recoverable transportation costs to those necessary for the resolution of the matter). Accordingly, I recommend concluding that Petitioner's airfare is not a recoverable cost under ICARA.

**C.  Dr. Sam Rolle**

Respondent objects to Dr. Rolle's fee because Dr. Rolle was never called as a witness nor included in any of the witness lists Petitioner filed.  ECF No. 47.  According to Dr. Rolle's invoice, Dr. Rolle performed a psychological evaluation of Petitioner.  ECF No. 50-1.  Petitioner contends that the evaluation was necessary due to Petitioner's anticipation that Respondent

would assert a "grave risk of harm" defense to the Petition.  *See West v. Dobrev*, 735 F.3d 921,

931 (10th Cir. 2013) ("A court is not bound to return a child wrongfully retained or removed if

the respondent establishes by clear and convincing evidence…that there is a grave risk that his or

her return would expose the child to physical or psychological harm or otherwise place the child

in an intolerable situation[.]").  Petitioner anticipated that this defense would be asserted due to

allegations made by Respondent against Petitioner in the underlying state court case. ECF No.

46.

I recommend concluding that Dr. Rolle's fees are partly recoverable. Given the

allegations of abuse in the state court case and that the "grave risk of harm" defense is one of the

few defenses available to a respondent under the ICARA, I find that Petitioner reasonably

believed that Respondent would assert this defense in the present action and prepared

accordingly.  *See Avendano v. Smith*, 806 F.Supp.2d 1149, 1166 (D.N.M. 2011) (listing four

exceptions available to a party opposing the return of the child including the "grave risk of harm"

defense).  Respondent's argument that Dr. Rolle's failure to testify in the case should preclude

recovery of this cost is unpersuasive. Respondent relies on *Freier v. Freier*, 985 F.Supp. 710,

714 (E.D. Mich. 1997), which disallowed costs for an expert witness on the basis that 28 U.S.C.

§§ 1821(b) and 1920(3) does not allow a prevailing party to recover expert witness fees for a

witness who does not testify at trial.  However, in *Carrasco v. Carrillo-Castro*, the Court

concluded that it "sees no basis in the language of ICARA for limiting recoverable expenses to

those available under § 1920. To the contrary, the only requirements for recovery of expenses

under ICARA are that they be 'necessary' and not 'clearly inappropriate.'" Civ. No. 12-00268

MV/WDS, ECF No. 30 at 6 (D.N.M. August 1, 2012).  In this case, Respondent has failed to

establish that it was clearly inappropriate for Petitioner to be evaluated by Dr. Rolle in

anticipation that Respondent would assert a grave risk of harm defense.  In recognition that Respondent did not actually assert this defense, however, I find it appropriate for the parties to share equally the cost of Dr. Rolle's evaluation. Accordingly, I recommend permitting Petitioner to recover $1000 toward Dr. Rolle's fee.

### D.  Andreas Hanke Airfare

Respondent argues that Andreas Hanke's non-refundable airline fee is calculated twice in Petitioner's requested fees.  Respondent is correct that this cost is claimed twice by Petitioner. According to Hanke's affidavit, the total of his fees and costs, inclusive of the non-refundable airline fee, was $12,521. ECF No. 46-4 at 2. However, in Petitioner's breakdown of claimed fees and costs, Petitioner requests the full $12,521 as attorney fees and also separately requests the $468 under his alleged costs.  ECF No. 46 at 3.  Accordingly, I recommend striking $468 from Petitioner's claimed costs.  Arguments regarding Hanke's remaining $12,521 fees will be considered below.

### E.  Miscellaneous Maestas Law Firm Costs

Respondent further objects to two costs claimed by the Maestas Law Firm as clearly inappropriate.[2] First, Respondent objects to the $100 fee for Hanke's appearance in the case. ECF No. 47 at 3. Respondent argues that Hanke made no appearance in the case and that this fee is therefore inappropriate.  Contrary to Respondent's assertion, the docket reflects that Hanke did appear in the case pro hac vice. *See* ECF No. 30.  Accordingly, this cost should be recoverable. Second, Respondent objects to the "investigative fee" of Dennis Romero because Petitioner did not attach proof of payment or describe its necessity. ECF No. 47 at 3.  Petitioner subsequently provided Romero's invoice detailing that these fees were charged for investigative interviews of

---

[2] Petitioner concedes that the $10 state court filing fee is an inappropriate cost.  This amount will therefore not be awarded.

Respondent's witnesses. ECF No. 50-2. Accordingly, I recommend concluding that these fees are recoverable.

## IV.    ATTORNEY'S FEES

Respondent raises a number of objections to Petitioner's claimed attorney's fees. Respondent challenges individual entries as excessive or unnecessary. Respondent further argues that the fee award should be reduced due to Petitioner's alleged history of abuse and Respondent's financial position. I will consider Respondent's arguments separately.

Courts generally apply the lodestar method in determining the appropriateness of attorney's fees in the ICARA context. *Avendano v. Smith*, 806 F.Supp.2d 1149, 1178 (D.N.M. 2011). In applying the lodestar method, "the Court multiplies the number of reasonable hours expended by a reasonable hourly rate." *Id.* Generally, the party requesting attorney's fees bears the burden of proving the amount of hours spent on the case and the appropriate hourly rates. *Case v. Unified School Dist. No. 233, Johnson Cnty, Kan.*, 157 F.2d 1243, 1249 (10th Cir. 1998). Further, the party "must make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (internal quotation marks and citation omitted). But these principles must be balanced with the respondent's burden in ICARA cases to show that the fee award would be clearly inappropriate. *See Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004).

### A.  Hanke's Attorney's Fees

Respondent objects to Hanke's attorney's fees on the basis that Hanke's time records are insufficient to support the claimed amount of fees. ECF No. 47 at 2. Respondent further objects to Hanke's fees on the basis that the Court limited Hanke's participation at the evidentiary hearing which effectively eliminated him as Petitioner's attorney. ECF No. 47 at 3.

As an initial matter, I am unpersuaded that the Court's limitation on Hanke's participation at the hearing effectively eliminated Hanke as Petitioner's attorney. According to Hanke's affidavit, he has extensive experience in cases under the Hague convention, specifically in cases in the United States. ECF No. 46-4 at 1. It is apparent that an attorney with Hanke's experience, regardless of whether he actively participated at the hearing, meaningfully contributed to Petitioner's representation. Furthermore, it does not appear from Hanke's billing records that he billed for the time he attended the hearing in this limited capacity. ECF No. 53-4.

That said, I agree with Respondent that Petitioner failed to adequately support Hanke's claimed fees of $12,521.[3] Documentation attached to Petitioner's initial motion merely contained an invoice without any breakdown of the fees. ECF No. 46-4. Subsequently, after Respondent correctly argued that this was insufficient, Petitioner filed a supplemental exhibit with Hanke's time records. ECF. No. 53. The fees in the supplemental exhibit, however, total only €6,654.18, which is significantly less than claimed amount of €11,045.85. Because Petitioner has failed to produce sufficient documentation supporting the claimed fee amount, I recommend reducing Hanke's claimed fees by 50% for a total of $6260.

## B. Maestas' Attorney's Fees

Respondent challenges Alan Maestas' fees on a number of grounds. First, Respondent argues that Maestas' affidavit in support of his fees should be struck because it is notarized by an employee of Maestas whose work is, in part, the subject matter of the affidavit and whose time records are referenced therein. ECF No. 47 at 3. Second, Respondent argues that Maestas' fees, as well as others referenced in the affidavit, should be reduced or not awarded because Maestas' averments regarding the reasonableness of the fees are self-serving. ECF No. 47 at 3. Third,

---

[3] Hanke's invoice and billing records list his fees in euros. In his affidavit, Hanke converts the €11,513.85 claimed fees to $12,521 without any explanation of the conversion rate used. Respondent, however, does not raise any objection to Hanke's conversion rate.

8

Respondent argues that entries that begin on September 22, 2015, well before the commencement of the action, are not recoverable. ECF No. 47 at 3.  Fourth, Respondent argues that any entries regarding Petitioner's motion to allow Hanke to appear via videoconference at the evidentiary hearing should be disallowed.

As to Respondent's first argument, I disagree that the affidavit should be struck in its entirety for this reason.  "The purpose of a notary is to certify and acknowledge that a signatory who appears before a notary is who she purports to be and attest that such person actually signs the document." *Alfieri v. Guild Times Pension Plan*, 446 F.Supp.2d 99, 110 (E.D.N.Y. 2006). I find no reason to conclude that Maestas' averments regarding Ms. McCann in the affidavit call in to question the validity of Maestas' signature on the affidavit or the averments contained therein.

As to Respondent's second argument, I disagree that Maestas' averments regarding the reasonableness of the rates charged or his failure to submit an affidavit by a disinterested attorney regarding the reasonableness of the rates charged necessitates striking the affidavit. Respondent is correct to the extent that courts have held that an attorney's own averments regarding the market rate are generally insufficient to support the reasonableness of the claimed rate.  *Neves v. Neves*, 637 F.Supp.2d 322, 341 (W.D.N.C. 2009). However, "[i]n the absence of specific evidence regarding the prevailing market rate, the Court may establish a reasonable rate based upon its own knowledge and experience of the relevant market." *Id.* In *Avendano*, 806 F.Supp.2d at 11178-79, Judge Browning discussed reasonable rates in New Mexico for ICARA cases. He concluded that rates from approximately $160-$250 per hour could be reasonable rates for these types of cases.  In this case, Petitioner's attorneys charged as follows: Alan Maestas, $250; Barbara Toth, $210; Kathryn Hardy, $180; Javier Torres-Hughes, $160. I find these rates to be reasonable and consistent with *Avendano.  See Jane L. v. Bangerter*, 61 F.3d 1505, 1510

(10th Cir. 1995) ("The setting of a reasonable hourly rate is within the district court's discretion.").

Third, I am unpersuaded by Respondent's argument that only fees that occurred after the commencement of the action are recoverable.  Petitioner contends that these fees were related to the preparation and filing of the lawsuit in federal court. ECF No. 50 at 4.  Fees incurred in the preparation of a lawsuit are legitimate and my review of the entries does not indicate that Petitioner is improperly seeking fees incurred in connection with work on the state court action. Accordingly, I recommend concluding that these fees are recoverable.

Fourth, I understand Respondent's argument in regard to fees related to the motion for Hanke to appear via videoconference at the evidentiary hearing to be that these fees should be disallowed because Petitioner knew Hanke was unavailable for the hearing before they filed the motion and the motion was subsequently denied.  I am unpersuaded by this argument for two reasons.  First, Hanke was available for the hearing and did, in fact, attend (albeit in a limited capacity). ECF No. 38. Second, Respondent cites no authority for the proposition that, because a motion is denied, fees related to that motion should not be recovered.  Accordingly, I recommend concluding that these fees are recoverable.

### C.  Toth and Hardy's Attorney's Fees

Respondent argues that fees for Barbara Toth and Kathryn Hardy should not be recoverable because neither is admitted to practice before this Court.  Respondent cites no authority for this proposition.  Accordingly, I see no reason to disallow fees for attorneys merely because they are not admitted to practice before this court.[4]

### D.  Torres-Hughes' Attorney's Fees

---

[4] Petitioner concedes Ms. Toth's 12/1/2015 entry is inappropriate because it dealt with child support issues.  These fees will accordingly be deducted from the fee award.

10

Respondent challenges a number of Torres-Hughes' billing entries.  I will consider these objections separately.[5]

First, Respondent contends that Torres-Hughes' entries totaling 7.2 hours on November 6, 2015, for researching and drafting a Motion for In Camera Interview of Child (ECF No. 34) is excessive. Based upon my review of the motion, I disagree that 7.2 hours was a clearly excessive amount of time to research and draft this motion.

Second, Respondent contends that Torres-Hughes' entry of 10 hours on November 9, 2015, is excessive. Torres-Hughes' entries on this date indicate that these entries were for trial preparation, including preparing for examinations and conferencing with witnesses and co-counsel.  I do not find 10 hours to be an excessive amount of time, especially given that this was on the eve of the evidentiary hearing.

Third, Respondent argues that Torres-Hughes' entries for November 10, 2015, exceed that of Maestas, the more senior attorney, and that it is not customary to include an attorney's travel time in a fee award.  First, it is appropriate to award counsel for travel time to attend the evidentiary hearing.  *See Berendsen v. Nichols*, 938 F.Supp. 737, 738 (D. Kan. 1996). Second, although Maestas was the senior attorney, it is appropriate for an associate, who is billed at a lower rate, to work an equivalent or slightly greater number of hours in preparation for the hearing than the lead attorney.  The one hour difference in entries for Maestas and Torres-Hughes on the day of the evidentiary hearing is unremarkable.

Fourth, Respondent argues that Torres-Hughes' entries on November 12, 16, and 17, 2015, are inappropriate because they occurred after the evidentiary hearing and before the issuance of the Court's decision.  The fact that these entries occurred after the evidentiary

---

[5] Petitioner concedes that Torres-Hughes entry on November 19, 2015 regarding the state court action is inappropriate.  This entry will accordingly be deducted from the fee award.

hearing or before the issuance of the Court's decision, however, is not determinative.  Based on

my review of these entries, the entries—a total of .7 hours—relate to small follow-up issues on

the case.  Respondent fails to highlight anything clearly inappropriate about the subject matter of

these entries.

Fifth, Respondent argues that Torres-Hughes' entries on November 20-24, 2015, are

inappropriate because they are excessive and because the Court entered its order without the

need of a response brief from Petitioner.  I understand Respondent's argument to be limited to

Torres-Hughes' entries on these dates regarding work done in relation to Respondent's Motion to

Stay and for Undertakings (ECF No. 41).  Respondent's argument is unpersuasive.  It is

disingenuous for Respondent to file a motion necessitating a response and then object when

Petitioner incurs attorney's fees for work done in response to the motion.  I further do not find

Torres-Hughes' fees excessive where Torres-Hughes detailed his research and, in addition to

researching and drafting the response, spent time communicating with Petitioner and others

about the return of the children. ECF No. 46-4 at 21-24.

Sixth, Respondent argues that Torres-Hughes' entry on September 26, 2015 (ECF No.

46-4 at 26), should be disallowed because it was merely a revision of the petition filed in state

court. ECF No. 47 at 4-5. According to the billing record, Torres-Hughes billed one hour for

completing the first draft of the petition and the initial edits.  Torres-Hughes further emailed both

Petitioner and Hanke.  I do not find this entry clearly inappropriate even assuming Torres-

Hughes was merely revising the state court petition because one hour is not an excessive amount

of time to revise the petition and correspond with Petitioner and Hanke.

Finally, Respondent contends that Torres-Hughes' entry on October 13, 2015 (ECF No.

46-4 at 28), should not be recoverable because it related to the state court dissolution of marriage

case. ECF No. 47 at 5. The entry states that Torres-Hughes spoke with Petitioner regarding his finances and business in Germany and also began "considering [m]otion for interpreter." While I do not see the relevance of Petitioner's finances and business to the instant action, I do find that preparation for hiring an interpreter is relevant to this case. Accordingly, I recommend reducing this entry by 50% and allowing Petitioner to recover $40.

### E. Evidentiary Hearing Fees

Respondent argues that Petitioner should not be able to recover for both Mr. Maestas' and Mr. Torres-Hughes' attendance at the evidentiary hearing. ECF No. 47 at 4. Respondent relies on *Aldinger*, 338 F.Supp.2d at 298, wherein the court reduced the fee award, in part, in concluding that the respondent should not "bear the burden of multiple representation." I find Respondent's argument unpersuasive in this context because Respondent also chose to engage multiple attorneys for the evidentiary hearing. ECF No. 38 (noting two attorneys present on behalf of Respondent at the evidentiary hearing). Accordingly, I recommend awarding fees for both attorneys' attendance at the evidentiary hearing.

### F. Equitable Considerations for Reducing Fee Award

Respondent argues that the fee award should be reduced due to Petitioner's alleged history of domestic abuse and in recognition of Respondent's limited financial resources. ECF No. 47 at 5. I will consider these points in turn.

First, Respondent correctly points out that courts have reduced fee awards in ICARA cases where there is a history of domestic abuse. *See Aguilera v. De Lara*, No. 14-1209, 2014 WL 4204947, *2 (D. Ariz. Aug. 25, 2014); *Silverman v. Silverman*, No. 00-2274, 2004 WL 2066778, * 4 (D. Minn. August 26, 2004). In these cases, however, there was evidence at the hearing and corresponding findings that domestic abuse occurred. *See Aguilera*, 2014 WL

4204947 at *2 ("evidence presented at the hearing in this case suggested that Petitioner was on occasion violent, including towards Respondent"); *Silverman*, 2004 WL 2066778 at *5 ("The Court found, in its August 28, 2003 order, that petitioner…had been physically and mentally abusive toward respondent.").  In the present case, Respondent relies on an ex parte temporary custody order entered in state court as part of the dissolution of marriage proceedings that included a directive for Petitioner to stay away from Respondent.  ECF No. 47 at 5; ECF No. 47-2.  This order was entered based on allegations by Respondent of Petitioner's "increasingly irrational and verbally violent and abusive conduct." ECF No. 47-3. Because this order was entered ex parte, Petitioner did not have an opportunity to respond to Respondent's allegations. Further, Respondent presented no evidence regarding these allegations at the hearing and Judge Vazquez made no findings regarding abuse. Given the lack of evidence regarding these allegations, I do not recommend reducing the fee award based on these allegations.

Second, Respondent argues that the fee award should be reduced based on her financial position. *See Neves*, 637 F.Supp.2d at 345 (stating that a respondent's financial condition may justify a reduction of a fee award in ICARA cases).  Respondent claims that she is currently unemployed and has no means to satisfy any award of fees and costs entered against her.  ECF No. 47 at 5-6. While Respondent's financial position may indeed be as dire as she claims, Respondent attaches no affidavit or other evidence supporting her assertions.  Similarly, there was no finding by Judge Vazquez regarding Respondent's financial position.  Therefore, although a reduction of the fee could be appropriate in the circumstances Respondent describes, there is nothing before me to substantiate Respondent's claims of financial hardship. Accordingly, I do not recommend reducing the fee award on this basis.

## V.      CONCLUSION

For the foregoing reasons, I recommend granting in part and denying in part Petitioner's

Motion for Attorney's Fees and Costs (ECF No. 46). Consistent with the reasoning above, I

recommend awarding $4557.50 in costs and $32,482.64 in attorney's fees.

UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**